UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 1:01-cr-5404 OWW |
| | ) | |
| Plaintiff/ | ) | ORDER DENYING MOVANT'S |
| Respondent, | ) | MOTION FOR RESENTENCING |
| v. | ) | PURSUANT TO RULE 60(b)(6), |
| | ) | FEDERAL RULES OF CIVIL |
| KEENAN T. GARDNER, | ) | PROCEDURE (Doc. 85), MOTION |
| | ) | FOR DEFAULT JUDGMENT (Doc. |
| Defendant/ | ) | 86), AND MOTION FOR ORDER |
| Movant | ) | TO SHOW CAUSE (Doc. 87) AND |
| | ) | DIRECTING MOVANT TO FILE |
| | | PLEADING WITHIN 30 DAYS OF |
| | | SERVICE OF ORDER |

On June 24, 2005, Keenan Troy Gardner, proceeding *in pro per,* filed a motion for resentencing "under the terms of the stipulated plea agreement" pursuant to Rule 60(b)(6), Federal Rules of Civil Procedure.[1]  This motion was filed in case number 1:01-cr-5404 OWW.  On August 1, 2005, Gardner filed a Motion for Default Judgment seeking to "grant Defendant's default judgment

---

[1] Although the motion does not designate Rule 60(b)(6) as a Federal Rule of Civil Procedure, Rule 60, Federal Rules of Criminal Procedure, provides: "There rules may be known and cited as the Federal Rules of Criminal Procedure."  Rule 60(b)(6), Federal Rules of Civil Procedure, provides for relief of a final judgment for "any other reason justifying relief from the operation of the judgment".

1

1  against the United States government for failure to file a timely
2  response," citing Fed. R. Civ. Proc. 55(b)(2).  On September 12,
3  2005, Defendant Gardner filed a "Motion For Order To Show Cause
4  why Defendant's motion for Rule 60(b)(6) should not be granted in
5  it's [sic] entirety."

   I.   <u>Background</u>.

   Gardner was indicted for armed bank robbery, along with three others, for the robbery of the San Joaquin Bank in Bakersfield, California, on October 18, 2001.  During the robbery, three to four masked men, including Gardner, entered the bank.  At least two of the men were armed with firearms.  Witnesses also noticed the robbers were using a two-way radio.

   The robbers emptied tellers' cash drawers and, at times, forcefully moved tellers to their cash drawers.  One teller was pushed down during the robbery and another fainted.

   Bank employees were able to activate a silent alarm during the robbery, notifying Bakersfield Police about the robbery in progress.  Law enforcement arrived at the bank as the robbers were fleeing and immediately engaged in a high-speed pursuit which proceeded through a residential area.

   Gardner admitted at his sentencing hearing that he was the driver of the get-away vehicle.  Sentencing Transcript (ST) 13:3-15:10.  Co-Defendant Laronique Whitehead fled from the vehicle during the police chase.  He was subsequently shot by officers after failing to comply with demands to stop.  The three remaining Defendants fled from the vehicle after it stopped a few blocks later.

   Gardner was arrested after he was found hiding behind bushes

in front of a residence.  The third Co-Defendant, Lovell Johnson, was arrested after a short foot chase which ended when Johnson was subdued by a police canine officer.  The remaining Co-Defendant, Norman Speck, was arrested after he was found hiding in the backyard of a residence.

The get-away vehicle used in the robbery was searched shortly after the stop.  Officers discovered that the ignition column of the vehicle, which had been reported stolen earlier in the day, was punched and there were no keys in the ignition. Officers also located a bundle of cash just outside the vehicle and a loaded .45 caliber handgun under the vehicle's front console.

The amount of money taken in the robbery was $14,157.00.

Gardner pled guilty pursuant to a written Plea Agreement to armed bank robbery as charged in Count One of a Two Count indictment on April 12, 2002.  Count Two charged Defendant with Carrying and Brandishing a Firearm During a Crime of Violence, a violation of 18 U.S.C. § 924(c).  In his Plea Agreement, Gardner agreed that he would not withdraw his guilty plea if the Court failed to follow any of the government's sentencing recommendations.  Plea Agreement (PA), p. 3:3-4.  Gardner expressly, knowingly and voluntarily waived his constitutional and statutory rights to appeal his plea and conviction.  PA, p. 3:6-16.  Gardner reserved the right to appeal his sentence. Gardner  expressly waived his right to appeal his plea and conviction on any ground and agreed not to contest his plea, conviction and sentence in any post-conviction proceeding, including a proceeding under 28 U.S.C. § 2255.  PA 3:8-14.

3

1  Gardner agreed his conduct was governed by United States
2  Sentencing Guidelines Section 2B3.1, the Guideline for Armed Bank
3  Robbery with a base offense level of 20.  PA 3:22-23.
4  Gardner agreed not to move for a downward departure seeking
5  to reduce his offense level, criminal history category, or
6  criminal history points.  PA 3:24-4:2.  Gardner agreed to plead
7  guilty as part of a package offer to the three Co-Defendants.  PA
8  4:11-24.
9  As to sentencing, besides the applicability of Guideline
10 Section 2B3.1, the government agreed to recommend a three level
11 reduction if the offense level is 16 or more; PA 4:26-5:4, if the
12 Gardner fully accepted responsibility.
13 Gardner acknowledged, understood and agreed that the
14 government made no other representations to him regarding fines,
15 his base offense level, whether any specific offense
16 characteristics applied to his conduct, his criminal history or
17 criminal history points under Chapter Four or whether additional
18 enhancements or reductions under Chapters Three or Five of the
19 United States Sentencing Guidelines apply and Defendant
20 understands that the government is free to comment and make
21 recommendations to the Court and the Probation Officer regarding
22 these matters.  The government agreed to dismiss Count Two at the
23 time of sentencing.  There was _no_ agreement that Gardner would
24 not receive further enhancements under the Guidelines for his
25 conduct.
26 Many of the 17 victims who were employed at the bank were
27 severely traumatized by the robbery.  At sentencing, the
28 prosecutor noted that Gardner was one of four admitted gang

4

members from Los Angeles who traveled to Bakersfield to commit the armed robbery. Sentencing Transcript (ST) 8:3-10:13.

In entering his guilty plea, Gardner stated under oath that he had read and understood the Plea Agreement, Change of Plea Transcript 9:4-21, that he understood and agreed that he was subject to potential enhancements for the use of force or violence, the use of a weapon, the amount of the loss, and the kind of injury suffered, Change of Plea Transcript 16:21-17:7, that the Plea Agreement sets forth a potential sentence, that neither the Probation Office nor the court were bound by the Plea Agreement, that he was potentially exposed to the maximum sentence allowed by law, Change of Plea Transcript 17:2-23, and admitted the factual basis set forth in the Plea Agreement, Change of Plea Transcript 26:1-16.

The Probation Officer in the Presentence Investigation Report recommended a Guideline Sentence calculated as follows:

| | |
|---|---|
| Base Offense Level USSG 2B3.1 | 20 |
| Increase for Property Taken in Robbery from a Financial Institution USSG 2B3.1(b)(1) | +2 |
| Brandishing a Firearm During the Commission of the Offense USSG 2B3.1(b)(2)(C) | +5 |
| Loss Exceeding $10,000, less than $50,000 USSG 2B3.1(b)(7)(B) | +1 |
| Reckless Endangerment USSG 3C1.2 | +2 |
| Adjusted Offense Level (subtotal) | 30 |
| Adjustment for Acceptance of Responsibility | -3 |
| Total Offense Level | 27 |

Gardner's criminal history points were based on convictions

5

for Carrying a Loaded Firearm in Public Place, no points; Carrying Concealed Weapon on Person; Possession of a Controlled Substance, three points; unlicensed driver one point; possession of under one ounce of marijuana one point; total points 5, result in criminal history category III.

At an offense level 27, criminal history category 3, Gardner faced an imprisonment range of 87 to 108 months under the Guidelines.  Gardner filed Formal Objections to the Probation Officer's Presentence Investigation Report as follows:  (1) Gardner objected to the reckless endangerment enhancement; (2) claimed his criminal history was overstated; and (3) objected to a brandishing a firearm enhancement.

Both parties filed Formal Objections, the Probation Officer responded and the objections were resolved by specific rulings on each at the sentencing hearing on June 24, 2002.

As to the brandishing of a firearm, the Court found as follows at ST 11:8-19:

> THE COURT:  There is a finding, and to be consistent and honest in my sentencing findings, I have already found in the case of two defendants that firearms were brandished during the robbery.  I can't very well not make that finding in this case, because Mr. Gardner was there --
>
> Mr. Nuttall: I understand.
>
> THE COURT:  -- and the firearms were brandished.  There is a dispute whether Mr. Gardner himself was actually armed with a firearm or not.  Two witnesses say that they identified him.  He denies it.
>
> But the five level enhancement is fully warranted by the facts.  And I, to be consistent, I do make that finding.

As to the reckless endangerment finding, after hearing the arguments of counsel at sentencing and considering the written

6

1  oral objections and response, the Court ruled as follows at ST
2  11:20-15:10:

3  THE COURT: It seems to me that as far as reckless endangerment, we have a robbery in progress where
4  weapons are present. We are all grateful, and I appreciate Mr. Gardner saying so, that none of the
5  people in the bank got hurt. There was a perilous chase then that ensued in the vehicle, and when the
6  vehicle came to a stop, there wasn't anybody who didn't run. Everybody kept the chase going.

7
8  And now, not only do we have the risk of a vehicle driving at unsafe speeds, weapons in hand, police
   pursuing, but we have individuals on the ground
9  running. And the Police have the report that it's an armed bank robbery, and so they know that the
10 likelihood is that they are dealing with armed individuals who are running, and it's in a residential
11 neighborhood.

12 I, frankly, don't know of facts, other than if we had a gun fight right there in the neighborhood, that would
13 provide less danger, quite frankly.

14 MR. NUTTALL: My understanding, if I may, was that was not recommended with respect to the other defendants,
15 the reckless endangerment.

16 THE COURT: It has been, and I have enhanced both for reckless endangerment.
17
   MR. NUTTALL: I wasn't here.
18
   THE COURT: Because all four occupants of the car ran,
19 even though it may not be shown that Mr. Gardner was the driver and he might have been a passenger and that
20 he couldn't do anything about part of it, the running, after there had been weapons involved in the robbery,
21 is such that there is no way, I think, to get around that.
22
   MR. CONKLIN: To be consistent, the Probation Officer
23 noted that, with the other Defendants, the reckless conduct endangerment may apply, but he opted not to
24 apply it because they were passengers.

25 This is the only Defendant which the 2 points for reckless endangerment is actually recommended because
26 it was concluded that this Defendant was the driver of the vehicle, so I didn't want the court to think the
27 government was misleading.

28 MR. NUTTALL: I don't think there has been a showing

7

```
 1        that he was.

 2        MR. CONKLIN:  Well, defense hasn't asked for an
          evidentiary hearing.  There were police reports that I
 3        believe stated that.

 4        The Probation Officer states that this Defendant was
          the driver of the vehicle.
 5
          I received defense counsel's objections at 3:30 on
 6        Friday and responded to those as best I could.  If he
          is now challenging that evidence, perhaps we should put
 7        this over so the government has the opportunity to
          present the report.
 8
          THE COURT:  I'm willing to provide you an evidentiary
 9        hearing if there is that dispute.

10        THE PROBATION OFFICER:  -- and I thank Mr. Conklin for
          correcting me, I do think it's a reckless endangerment
11        circumstance, quite frankly as to everybody, once the
          running in the neighborhood, after they bailed out of
12        the car, occurred.

13        But, candidly, another Defendant had a career criminal
          enhancement, and so we're not in a position where it
14        made very much of a difference.

15        And so we will, if you wish, Mr. Nuttall, give you the
          opportunity to show that the Defendant was not the
16        driver.

17        . . .

18        MR. NUTTALL:  Could I have just a moment?

19        THE COURT:  Yes.

20        (The defendant and his counsel conferred off the
          record.)
21
          MR. NUTTALL:  We are prepared to proceed.  Mr. Gardner
22        was the driver.

23        THE COURT:  All right.

24        MR. NUTTALL:  And he's just told me that.

25        THE COURT:  I appreciate your honesty Mr. Gardner.  We
          will make the reckless endangerment finding and that
26        gives us an offense level of 30.

27        After a 3 level reduction for super acceptance of
          responsibility, the total offense level as adjusted is
28        27.  The criminal history category is a III.
```

The Court then considered the objection to alleged overstatement of criminal history.  Gardner had two offenses of which he was convicted that did not involve any points at ages 18 and 21.  Three points for possession of a controlled substance conviction and then two misdemeanor offenses, approximately five years and six years later for which two points were added.  The Court considered that even if a one point reduction for overstatement of criminal history was given, Gardner would still have four criminal history points leaving him in criminal history category III.

Gardner did spend a prison term for the possession of a controlled substance conviction and had no time on the unlicensed driver and the marijuana possession offenses.  The Court found the criminal history accurate, not overstated, and was satisfied that for a very serious offense, the Guideline adequately addressed the crime.  ST 15:11-16:6.

The Court then turned to the difference in the Gardner's sentence from two Co-Defendants who had already been sentenced, and found that the enhancements here took the criminal history score high enough that it was not necessary to impose the top of the Guideline.  Because Gardner was the wheel man, a term of 90 months was selected from the 87 to 100 month (21 month) range, recognizing Gardner's family circumstances and to give him some incentive to become a productive and law abiding citizen.  ST 16:7-17:7.  Gardner was then sentenced to a prison term of 90 months.

Gardner did not file a Notice of Appeal.

II.   **Applicability of Rule 60(b)(6), Federal Rules of Civil**

Procedure.

Gardner cannot proceed in the criminal action pursuant to Rule 60(b), Federal Rules of Civil Procedure. Rule 60(b) does not apply to obtain relief from a final judgment in a criminal action. See United States v. Mosavi, 138 F.3d 1365 (11th Cir. 1998); 12 Moore's Federal Practice, § 60.02 (Matthew Bender 3rd ed.).

III. Recharacterization of Motion to Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255.

In general, 28 U.S.C. § 2255 provides the exclusive procedural mechanism by which a federal prisoner may test the legality of his detention. *Lorentsen v. Hood*, 223 F.3d 950, 953 (9th Cir.2000).

The inquiry turns to whether to allow Gardner to recharacterize his motion to one pursuant to Section 2255 is considered.

Gardner waived his right to challenge his conviction and sentence pursuant to Section 2255 in the Plea Agreement and during the change of plea proceedings. In addition, the instant motion was not filed within the one-year limitation period applicable to a Section 2255 motion and no basis for equitable tolling is alleged, *see Calderon v. U.S. Dist. Court for Central Dist. of Cal.*, 128 F.3d 1283, 1288-1289 (9th Cir. 1997), *cert. denied*, 522 U.S. 1099 and 523 U.S. 1061 (1998), *overruled on other grounds*, 163 F.3d 503 (9th Cir. 1998). Nonetheless, it cannot be determined as a matter of law that recharacterization of Gardner's motion to a Section 2255 motion will be futile.

In *United States v. Seesing*, 234 F.3d 456 (9th Cir.2000),

10

the Ninth Circuit held:

> When presented with a pro se motion that could be recharacterized as a 28 U.S.C. § 2255 motion, a district court should not so recharacterize the motion unless: (a) the pro se prisoner, with knowledge of the potential adverse consequences of such a recharacterization, consents or (b) the district court finds that because of the relief sought that the motion should be recharacterized as a 28 U.S.C. § 2255 motion and offers the pro se prisoner the opportunity, after informing the prisoner of the consequences of recharacterization, to withdraw the motion. Under either scenario, the pro se prisoner has the option to withdraw the motion and file one all-inclusive 28 U.S.C. § 2255 motion within the one-year statutory period.

234 F.3d at 464. In *Castro v. United States*, 540 U.S. 375, 383 (2003), the Supreme Court held:

> [T]he lower courts' recharacterization powers are limited in the following way:
>
> The limitation applies when a court recharacterizes a *pro se* litigant's motion as a first § 2255 motion. In such circumstances the district court must notify the *pro se* litigant that it intends to recharacterized the pleading, warn the litigant that this recharacterization means that any subsequent § 2255 motion will be subject to the restrictions on 'second or successive' motions, and provide the litigant an opportunity to withdraw the motion or to amend it so that it contains all the § 2255 claims he believes he has. If the court fails to do so, the motion cannot be considered to have become a § 2255 motion for purposes of applying to later motions the law's 'second or successive' restrictions. § 2255, ¶ 8.

Therefore, before characterizing the motion as a motion for relief pursuant to Section 2255, Gardner must file a pleading with this court in this action stating whether petitioner consents to the characterization of his motion as a motion for

11

relief pursuant to 28 U.S.C. § 2255 or withdraws the motion.  If Gardner elects to consent to the characterization of his motion as a motion for relief pursuant to Section 2255, Gardner must set forth all of the grounds upon which he relies in seeking relief, and set forth the facts upon which he relies in asserting that the motion was timely filed within the one-year limitation period applicable to Section 2255 motions or the facts upon which he relies in asserting that he is entitled to equitable tolling of the one-year limitation period.  Failure to assert all of the grounds for relief may preclude Gardner from asserting other grounds in a second or successive Section 2255 motion.[2]

Assuming *arguendo* that Gardner consents to the recharacterization of the motion to a Section 2255 motion and that the motion is timely or subject to equitable tolling, the ground for relief set forth above is without merit.  Gardner had no agreement whatsoever with the government for any specific sentence.  The government expressly reserved the right to freely comment about Guideline enhancements.  Gardner had no agreement that appropriate enhancements (or reductions) to his base offense level would apply.  He agreed to the base offense level of 20 for armed bank robbery and did not dispute the amount of loss at over $14,157.  All Gardner's arguments and objections were fully considered and ruled on at sentencing.  There is no error in law.  There is no factual error.  Gardner did not appeal.  There is absolutely no basis on which to re-sentence Gardner.

---

[2]No opinion is expressed whether a Section 2255 motion will be timely or appropriately filed, given the waiver in the Plea Agreement.

IV.  **CONCLUSION**

For all the reasons stated above:

1.  Gardner's Motion under Rule 60(b)(6) is DENIED.  His subsequent motions to enter the government's default, and for an order to show cause, are DENIED as without merit.

2.  Within 30 days of the filing date of this Order, Gardner shall file a pleading in this action stating whether petitioner consents to the characterization of his motion as a motion for relief pursuant to 28 U.S.C. § 2255 or withdraws the motion.  If Gardner elects to consent to the characterization of his motion as a motion for relief pursuant to Section 2255, Gardner must set forth the facts upon which he relies in asserting that the motion was timely filed within the one-year limitation period applicable to Section 2255 motions or the facts upon which he relies in asserting that he is entitled to equitable tolling of the one-year limitation period.  Failure to timely comply will result in an order that Gardner does not consent to the recharacterization of the motion as a Section 2255 motion.

IT IS SO ORDERED.

Dated:   November 10, 2006              /s/ Oliver W. Wanger
668554                          UNITED STATES DISTRICT JUDGE